**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **TEAMLOGIC, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. 3:16-CV-2542-BH |
| | § | |
| **MEREDITH GROUP IT, LLC;** | § | |
| **GREENBEAN IT, LLC; JON MILLER;** | § | |
| **MATT MEREDITH; and KAREN** | § | |
| **MEREDITH,** | § | |
| | § | |
| **Defendant.** | § | Consent Case |

## MEMORANDUM OPINION AND ORDER

By order filed January 31, 2017, this matter has been transferred for the conduct of all further proceedings and the entry of judgment. (doc. 46.) Before the Court is *Defendants Meredith IT, LLC and Karen Meredith's Motion to Dismiss*, filed September 29, 2016 (doc. 11). Based on the relevant filings and applicable law, the motion is **DENIED**.

## I. BACKGROUND

On September 2, 2016, TeamLogic, Inc. (Plaintiff) filed suit against several defendants for alleged misappropriation of trade secrets and intellectual property, conversion, trademark infringement, conspiracy, violation of the Texas Theft Liability Act, interference with business relationships, unfair competition, unjust enrichment, and breach of contract. (doc. 1 at 1-13.)[1] It seeks injunctive relief, statutory damages and penalties, exemplary damages, and attorneys' fees. (*Id.* at 13-14.)

Plaintiff is a California corporation with its principle place of business in Orange County,

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

California. (*Id.* at 2.) Through franchises, it provides outsourced managed information technology (IT) services for thousands of small-to-medium-sized businesses. (*Id.* at 3.) It also owns several registered servicemarks, including "TeamLogic" and "TLIT," and domain names, including www.teamlogictit.com, that are used to identify email addresses and sites for the franchisees. (*Id.* at 4.) Franchisees are permitted to use Plaintiff's property, including operating systems, compilations of information, customer names and contract information, business strategies, product structure, customer utilization data, pricing, marketing materials, tradenames, trade secrets, and trademarks. (*Id.* at 3-4.) They "explicitly acknowledge that all of this property and the fruits of its use remain owned by [Plaintiff]." (*Id.* at 4.)

On July 18, 2006, Plaintiff entered into a ten-year franchise agreement (the Agreement) with Meredith Group IT, LLC (MIT),[2] a Texas limited liability company with its principle place of business in Irving, Texas. (doc. 1 at 4.) Karen Meredith (Karen) is MIT's principal. (*Id.* at 5.) As a franchisee, MIT utilized Plaintiff's systems and materials in providing outsourced IT services to customers in the North Texas area. (*Id.*) Karen's son, Matt Meredith (Matt), handled marketing, and Jon Miller (Miller) was employed as a technician. (*Id.* at 6.) As part of his employment, Miller had access to Plaintiff's proprietary and trade secrets, including customer contact, data, and pricing information. (*Id.*) Zachary King (King) was also employed by MIT. (*Id.* at 3, 5.)

Sometime in 2015, Karen decided not to renew MIT's franchisee agreement with Plaintiff, but she did not immediately inform it of her decision. (*Id.* at 4.) In August 2015, Matt formed Greenbean IT, LLC (Greenbean) with the knowledge of both Miller and Karen. (*Id.* at 5.) Matt also

---

[2] The defendants contend that the company is actually named Meredith IT, LLC. (doc. 12 at 1.) Plaintiff does not appear to directly address this contention in its response, but it does identify the company as Meredith IT, LLC. (doc. 25 at 1.)

registered the domain name www.tlit.com, with knowledge that "TLIT" was an acronym for Plaintiff. (*Id.*) Plaintiff claims that this was done to make it easier to divert its customers to the new company upon expiration of the Agreement, instead of having them transitioned to another Texas-based franchisee. (*Id.*) MIT also asked to be released from the required use of the AutoTask system, which Plaintiff used to track its franchisees. (*Id.*)

Plaintiff contends that although Karen had decided not to extent MIT's franchise agreement, she "led [it] to believe that she was considering renewal" so that it would "not take steps to prepare to transition [MIT's] customers to another franchisee and so that the customers could be diverted instead to [Greenbean]." (*Id.* at 4.) Karen also did not send out the required notices to customers and suppliers about the transition to another franchisee at the expiration of the Agreement. (*Id.* at 7.) Additionally, Miller forwarded customer lists to King and diverted incoming emails to Greenbean. (*Id.* at 6.) Miller and Matt also assisted in designing and setting up Greenbean's website for managed IT services, which had the same color scheme and taxonomy as Plaintiff's branded materials. (*Id.*) They also allegedly used Plaintiff's property, including customer lists, to move MIT's customers to Greenbean while Karen "looked the other way." (*Id.*) MIT and Plaintiff's franchise relationship ended on July 18, 2016. (*Id.* at 4.)[3]

On September 29, 2016, Karen and MIT (Defendants) filed a motion to dismiss. (docs. 11-13.) Plaintiff responded, and Defendants filed a reply. (docs. 25-27, 31-32.) The motion is now ripe for determination.

---

[3] King filed a declaratory judgment action against Plaintiff in the 44th Judicial District Court of Dallas County, Texas, which remains pending. (*Id.* at 3 n.1); *see King v. TeamLogic, Inc.*, No. DC-16-08626 (44th Dist. Ct., Dallas County). He seeks a declaratory judgment on issues related to his employment with MIT, information he learned during his employment, and obligations or restrictions related to his employment and the Agreement. (doc. 13 at 56-57.) He also brings tortious interference and defamation claims against Plaintiff. (*Id.* at 51-62.)

## II. RULE 12(b)(1) MOTION

Defendants first move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. (doc. 12 at 9-10.)

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

A district court may dismiss for lack of subject-matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v.*

*Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (en banc). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject-matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). If sufficient, those allegations alone provide jurisdiction. *Id.* Facial attacks are usually made early in the proceedings. *Id.* "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998) (citations omitted). If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Although Defendants submitted an appendix with their motion to dismiss and reply (docs. 13, 32), they rely solely on Plaintiff's complaint to support their Rule 12(b)(1) motion to dismiss (doc. 12 at 9-10). Accordingly, their motion presents a facial attack that does not require the resolution of factual matters outside the pleadings. *See Williamson*, 645 F.2d at 412-13.

## A. <u>Diversity Jurisdiction</u>

Plaintiff's complaint primarily alleges subject-matter jurisdiction based on diversity of citizenship. (doc. 1 at 1.)

Diversity jurisdiction is proper only when complete diversity exists between the parties and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). "Complete diversity" means that a plaintiff may not share citizenship with any defendant. *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992). A party asserting diversity jurisdiction must "*distinctly* and *affirmatively*" allege the *citizenship* of the parties. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (emphasis in original) (citing *McGovern v. Am. Airlines, Inc.*, 511 F.2d 803, 805 (5th Cir. 1991)). It is a well-established legal principle that "[c]itizenship and residence are not synonymous." *Parker v. Overman*, 59 U.S. 137, 141 (1855) (internal quotation marks omitted). "For diversity purposes, citizenship means domicile; mere residence in the State is not sufficient." *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974); *accord Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 799 (5th Cir. 2007). "Domicile requires residence in [a] state *and* an intent to remain in the state." *Preston*, 485 F.3d at 798 (emphasis added) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)); *see Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996) (holding that "change in domicile typically requires only the concurrence of: (1) physical presence at the new location and (2) an intention to remain there indefinitely . . . or, as some courts articulate it, the absence of any intention to go elsewhere").

A corporation is a citizen of the state in which it was incorporated and the state in which it has its principal place of business. *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, LLC*, 757 F.3d 481, 483 (5th Cir. 2014); 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."). Additionally, "[t]he citizenship of a limited partnership is based upon the citizenship of each of its partners." *Harvey v. Grey Wolf Drilling Co.*,

542 F.3d 1077, 1079 (5th Cir. 2008) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (holding that the citizenship of an unincorporated entity or association, such as a partnership, is based upon the citizenship of each of its members)). Likewise, the citizenship of a limited liability company "is determined by the citizenship of all of its members." *Id.* at 1080. "These rules are straightforward, and the law demands strict adherence to them." *Getty Oil Corp.*, 841 F.2d at 1259 (noting the "importance of clear, distinct, and precise affirmative jurisdictional allegations").

"[T]he basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Illinois Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983) (citation and internal quotation marks omitted). As noted by the Fifth Circuit:

> "The burden of proving that complete diversity exists rests upon the party who seeks to invoke the court's diversity jurisdiction." *Getty Oil*, 841 F.2d at 1259; *see McGovern v. American Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir. 1975) ("The burden is on a plaintiff to allege and invoke jurisdiction."). "When jurisdiction depends on citizenship, citizenship should be 'distinctly and affirmatively alleged.'" *McGovern*, 511 F.2d at 654 (quoting 2A Moore's Federal Practice ¶ 8.10, at 1662); *see also Powell v. Abney*, 83 F.R.D. 482, 487 (S.D. Tex. 1979) ("In invoking diversity jurisdiction, the plaintiff's complaint must specifically allege each party's citizenship and these allegations must show that the plaintiff and defendant are citizens of different states."). Failure adequately to allege the basis for diversity jurisdiction mandates dismissal. *Patterson v. Patterson*, 808 F.2d 357, 357 (5th Cir. 1986); *McGovern*, 511 F.2d at 654.

*Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804-05 (5th Cir. 1991) (emphasis added).

Here, Plaintiff's complaint alleges that it is a California corporation with its principle place of business in Orange County, California; MIT was a Texas limited liability company with its principal place of business in Irving, Texas; and Greenbean is a Texas limited liability company with its principal place of business in Grapevine, Texas. (doc. 1 at 2-3) It also alleges Miller, Matt, and Karen are "*resident[s]* of Texas," but does not distinctly and affirmatively allege the citizenship of

each individual. (*See id.*) (emphasis added); *see also Parker*, 59 U.S. at 141 (noting that citizenship and residency are not synonymous). As explained by the Fifth Circuit, "[i]t is important to distinguish between citizenship and residency, because a 'citizen of one state may reside for a term of years in another state, of which he is not a citizen; for, citizenship is clearly not co-extensive with inhabitancy.'" *Simon v. Taylor*, 455 F. App'x 444, 446 n.2 (5th Cir. 2011) (per curiam) (quoting *Bingham v. Cabot*, 3 U.S. 382, 383 (1798)).

As noted, Plaintiff's obligation to distinctly and affirmatively allege the citizenship of the parties "cannot be established argumentatively or by mere inference," and "strict adherence" to the jurisdictional rules is required. *Getty Oil*, 841 F.2d at 1259 (citing *Illinois Cent. Gulf R. Co.*, 706 F.2d at 636 & n.2). Because Plaintiff has failed to distinctly and affirmatively allege the citizenship of the individual defendants, it has failed to show that diversity jurisdiction exists over this action.[4]

## B.    Federal Question Jurisdiction

Plaintiff's complaint also alleges federal question jurisdiction under the Lanham Act. (doc. 1 at 1.)

Federal question jurisdiction exists in all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. It exists only when a federal question is presented on the face of the plaintiff's well-pleaded complaint. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). A federal question is presented when "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Singh v. Duane Morris LLP*, 538 F.3d 334, 337-38 (5th Cir. 2008). To determine

---

[4] Because Plaintiff has not sufficiently alleged complete diversity of citizenship, it is unnecessary to consider whether it has sufficiently alleged that the matter in controversy exceeds $75,000, exclusive of interest and costs.

whether resolution of a substantial question of federal law is necessary, courts must determine whether "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Id.* at 338.

The Lanham Act is "[a] 1946 federal statute that provides for a national system of trademark registration and protects the owner of a federally registered mark against the use of similar marks if any confusion might result or if the strength of a strong mark would be diluted." *US Green Bldg. Council, Inc. v. Wardell*, No. 3:14-CV-01541-M-BH, 2016 WL 3752964, at *3 n.5 (N.D. Tex. June 17, 2016) (quoting *Lanham Act*, BLACK'S LAW DICTIONARY (10th ed. 2014)), *adopted by* 2016 WL 3766362 (N.D. Tex. July 11, 2016). The Lanham Act is a proper basis for federal question jurisdiction. *See Baker v. DeShong*, 90 F. Supp. 3d 659, 665 (N.D. Tex. 2014) (noting "the Lanham Act claims confer federal question jurisdiction under 28 U.S.C. § 1331").

Plaintiff's complaint clearly alleges claims against Greenbean and Matt for trademark infringement, citing the Lanham Act as a basis for jurisdiction. (doc. 1 at 1, 8-9.) Subject-matter jurisdiction exists over these claims. It appears to allege only state law claims of misappropriation of trade secrets and intellectual property against Defendants, conspiracy and interference with business relationships against Karen, and breach of contract against MIT, however, necessitating determination of whether supplemental jurisdiction exists over those claims. (doc. 1 at 7-15.)

## C.   <u>Supplemental Jurisdiction</u>

Plaintiff's complaint alleges supplemental jurisdiction under 28 U.S.C. § 1367(a). (doc. 1 at 1.)

Federal courts "have supplemental jurisdiction over all other claims that are so related to

claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In essence, § 1367(a) grants courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:06-CV-879-BH, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

Here, Defendants do not contend that supplemental jurisdiction over the state law claims against them is lacking or argue why its exercise should be declined.[5] (*See* docs. 12, 31.) Plaintiff's state and federal claims all relate to the Agreement, Karen's interactions with Plaintiff and the other defendants, and Matt and Miller's actions concerning information they obtained while working for MIT. (*See id.*) The state and federal claims form part of the same case or controversy or derive from one common nucleus of operative fact. There appears to be no reason to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).

Defendants' motion to dismiss for lack of subject-matter jurisdiction is **DENIED**.

### III. RULE 12(b)(6) MOTION

Defendants also move to dismiss Plaintiff's claims under Rule 12(b)(6). (doc. 12 at 11.)

_____

[5] A court may decline to exercise supplemental jurisdiction over a state claim if:

(1) the claim raises a novel or complex issue of state law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his or her] claim[s]." *Collins*, 224 F.3d at 499 (citation omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Here, although they submitted an appendix with both their motion and reply (docs. 13, 32), Defendants do not rely on any evidence outside of the pleadings. (*See* doc. 12 at 11-15.) Conversion of Defendants' motion to dismiss into a motion for summary judgment is therefore unnecessary. *See Collins*, 224 F.3d at 499; *Katrina Canal Breaches Litig.*, 495 F.3d at 205.

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must

provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570 (emphasis added).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

## A. <u>Misappropriation of Trade Secrets</u>

Defendants first move to dismiss Plaintiff's claim for misappropriation of trade secrets. (doc. 12 at 12.) They argue that "[Plaintiff] fails to make even the most basic factual allegations that any of [its] Property actually qualifies as a trade secret under the factors set forth under the Texas Uniform Theft of Trade Secrets Act." (*Id.*) They also argue that "Plaintiff fails to identify a single piece of confidential or proprietary information the [Defendants], rather than the [other named

defendants], disclosed or used without consent." (*Id.*)

Under Texas law, a plaintiff claiming trade secret misappropriation bears the burden of establishing that: (1) a trade secret existed, (2) the trade secret was acquired through breach of a confidential relationship or was discovered by improper means, (3) the defendant used the trade secret without the plaintiff's authorization, and (4) the plaintiff suffered damages as a result. *CQ,, Inc. v. TXU Mining Co., L.P.*, 565 F.3d 268, 273 (5th Cir. 2009) (citing *Gaia Techs. Inc. v. Recycled Prods. Corp.*, 175 F.3d 365, 376 (5th Cir. 1999)). A trade secret is any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it. *Phillips v. Frey*, 20 F.3d 623, 628 (5th Cir. 1994) (citations omitted); *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003).

Whether a trade secret exists is usually a question of fact to be decided by the judge or jury as a factfinder. *Gen. Universal, Sys., Inc. v. Lee*, 379 F.3d 131, 150 (5th Cir. 2004) (per curiam). To determine the existence of a trade secret, a factfinder must examine six relevant but non-exclusive criteria: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to safeguard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Id.* (citing *In re Bass*, 113 S.W.3d at 740). "The status of information claimed as a trade secret must be ascertained through a comparative evaluation of all the relevant factors, including the value, secrecy, and definiteness of the information as well as the nature of the defendant's misconduct." *In re Bass*, 113 S.W.3d at 739 (citing Restatement (Third) of Unfair Competition, §

39 (Am. Law Inst. 1995)). Since these factors turn on factual considerations gleaned from discovery, and are often difficult, if not futile, to apply in the context of a motion to dismiss, it is premature to weigh them at this stage. *See Fast Capital Mktg., LLC. v. Fast Capital LLC*, No. H-08-2142, 2008 WL 5381309, at *14 n.7 (S.D. Tex. Dec. 24, 2008). Nevertheless, customer lists, pricing information, client information, customer preferences, buyer contacts, blueprints, marketing strategies, and drawings have all been recognized as trade secrets. *Grand Time Corp. v. Watch Factory, Inc*., No. 3:08-CV-1770-K, 2010 WL 92319, at *4 (N.D. Tex. Jan. 6, 2010) (citing *Global Water Group, Inc. v. Atchley*, 244 S.W.3d 924, 928 (Tex. App.—Dallas 2008, pet. denied)).

Plaintiff alleges that Defendants failed to protect its proprietary information and trade secrets from being obtained by Greenbean, including operating systems, compilations of information, customer names and contract information, business strategies, product structure, customer utilization data, pricing, marketing materials, tradenames, trade secrets, and trademarks. (doc. 1 at 3-4, 7-8.) It also alleges that Defendants "did nothing to stop" the other defendants from using its proprietary information and trade secrets, and that Karen "actively assisted" the other defendants by "stringing [it] along" regarding her intentions to renew her franchise so that it would not prepare to transition clients to a different franchise. (*Id.* at 7-8.) Finally, it alleges that the defendants' use of its proprietary information and trade secrets was intentional and caused it to suffer damages, including loss of royalties and clients. (*Id.* at 8.)

Plaintiff has alleged that MIT's principal misappropriated its trade secrets by actively assisting the other defendants. *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 188 & n.6 (Tex. 2007) ("Corporations can act only through human agents, and many business-related torts can be brought against either a corporation or its employees.") (citing cases). Accepting its well-pleaded

14

facts as true and viewing them in the light most favorable to it, as the Court must, Plaintiff has sufficiently alleged that Defendants misappropriated its trade secrets.

## B.    <u>Conspiracy</u>

Defendants next move to dismiss Plaintiff's conspiracy claim against Karen.  (doc. 12 at 12-13.)  They argue that Plaintiff has not alleged a meeting of the minds between Karen and the other defendants to intentionally and unlawfully take its property.  (*Id.*)

Under Texas law, civil conspiracy is "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Rodgers v. City of Lancaster Police*,  No. 3:13-CV-2031-M-BH, 2017 WL 457084, at *16 (N.D. Tex. Jan. 6, 2017) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)), *adopted by* 2017 WL 447216 (N.D. Tex. Feb. 2, 2017).  "[I]n short, there must be a preconceived plan and unity of design and purpose, for the common design is of the essence of the conspiracy." *I Love Omni, LLC v. Omnitrition Int'l, Inc.*, No. 3:16-CV-2410-G, 2017 WL 1281130, at *3 (N.D. Tex. Apr. 6, 2017) (quoting *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968)).  "[A] defendant's liability for conspiracy depends on [his or her] participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).  Additionally, it requires a specific intent. *I Love Omni*, 2017 WL 1281130, at *3.

Plaintiff alleges that Karen, Miller, Matt, and King "conspired to misappropriate [its] Property in order to divert it to Greenbean and profit therefrom."  (doc. 1 at 9.)  It also alleges that

Karen specifically "agreed to 'look the other way' while [specific actions of the other individual defendants] occurred and to delay sending mandatory notice to the . . . customers upon the expiration of [MIT's] franchise relationship." (*Id.*) Plaintiff also alleges that the defendants' actions caused confusion among users of its branded IT services, customers were diverted to Greenbean, and it suffered loses through loss of clients and royalties. (*Id.*) Accepting its well-pleaded facts as true and viewing them in the most favorable light, Plaintiff has sufficiently alleged that Karen conspired with other defendants to misappropriate its property in order to divert it to Greenbean.

## C.   Interference with a Business Relationship

Defendants next move to dismiss Plaintiff's claim against Karen for tortious interference with a business relationship. (doc. 12 at 12-13.) They argue that it makes only "self-serving" conclusory statements, and "[a]t even the most basic level, [it] does not identify any valid and enforceable contracts to which [it] was actually a party with which the Defendants purportedly interfered. Instead, it relies on alleged contracts between MIT and its customers." (*Id.*)

To establish tortious interference with a business relationship, a plaintiff must plead (1) a reasonable probability that the parties would have entered into a contract or relationship; (2) an intentional and malicious act by which the defendant prevented the relationship from occurring, with the purpose of harming the plaintiff; (3) lack of privilege or justification of the defendant to do the act; and (4) actual harm or damage resulting from the defendant's interference. *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 128 F. Supp. 2d 988, 1002 n.5 (N.D. Tex. 2001) (citing *Garner v. Corpus Christi Nat'l Bank*, 944 S.W.2d 469 (Tex. App.—Corpus Christi 1997, writ denied), *cert. denied*, 525 U.S. 965 (1998)). Tortious interference with a business relationship is a distinct cause of action from tortious interference with a contract, involving the proof of different elements. *See Apani Sw.*,

128 F. Supp. 2d at 1002. It does not require the allegation of an existing contractual relationship.[6] *Id.* at 1002 & n.4.

Plaintiff alleges that it developed business relationships via its authorized franchisees. (doc. 1 at 11.) It also claims that the defendants, including Karen, "actively divert[ed] customers to Greenbean (who accepted them knowing their sources), thereby directly benefitting from the improper use of [its] Property." (*Id.*) The defendants also used its property to contact clients and tell them that the business was "transitioning" and induced them to leave Plaintiff's IT-system and begin doing business with Greenbean instead, which also interfered with Plaintiff's business relationships with other franchisees who would have received the customers who were properly transitioned. (*Id.* at 11-12.) Accepting its well-pleaded facts as true and viewing them in the light most favorable to it, Plaintiff has sufficiently alleged a claim for tortious interference with a business relationship.

## D.    Breach of Contract

Defendants also moves to dismiss Plaintiff's breach of contract claim against MIT. (doc. 12 at 14-15.)

The essential elements of a breach of contract claim in Texas are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

_____

[6] The elements of tortious interference with an existing contract are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damages or losses. *Apani Sw.*, 128 F. Supp. 2d at 1002 n.4 (citing *ACS Inv'r, Inc. v. McLaughlin*, 943 S.W.2d 426 (Tex. 1997)).

Here, Plaintiff alleges that it had a valid contract with MIT, it complied with its obligations under the contract but MIT did not, and it sustained damages as a result of MIT's violation. (*See* doc. 1 at 12-13.) Accepting its well-pleaded facts as true and viewing them in the light most favorable to it, Plaintiff has sufficiently alleged a claim for a tortious interference with a business relationship.

Defendants' Rule 12(b)(6) motion to dismiss is **DENIED**.

## IV. RULE 12(b)(7)

Defendants also moves to dismiss Plaintiff's claims under Rule 12(b)(7). (doc. 12 at 15.) They argue that King "is an indispensable and necessary part to the litigation because his actions during his prior employment with MIT and subsequent employment with Greenbean, his interactions with MIT's former customers, and [Defendants'] purported knowledge of same lie at the very heart of [Plaintiff's] claims. Moreover, [King] has an overwhelming interest in the suit because the resolution of [Plaintiff's] claims can and will significantly impact [his] ability to continue working in the IT industry on behalf of Defendant Greenbean or otherwise." (doc. 12 at 15.) They note that "[Plaintiff] has filed pleadings in this Court identifying King as a co-conspirator and has identified MIT as a necessary party in responses to discovery issued in the State Court Case. Simply put, [Plaintiff] cannot have its cake and eat it too." (doc. 31 at 9.)

Rule 12(b)(7) allows for dismissal of a case for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. Fed. R. Civ. P. 19(a); *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986) ("The federal rules seek to bring all persons that may have an interest in the subject of an action together in one forum so that the lawsuit can be

fairly and completely disposed of. In accord with this goal, Rule 19 seeks to bring into a lawsuit all those persons who ought to be there by requiring joinder.") (citations omitted). It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined. *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003) (citing Fed. R. Civ. P. 19(b); *Pulitzer-Polster*, 784 F.2d at 1308).

The Rule 12(b)(7) analysis first requires determination of whether a person should be joined in the lawsuit under Rule 19(a). *Id.* at 439. If joinder is warranted, then the person will be brought into the lawsuit. *Id.* If joinder would destroy the court's jurisdiction, however, the court must determine under Rule 19(b) whether to press forward without the person or to dismiss the litigation. *Id.* (citing *Pulitzer-Polster*, 784 F.2d at 1308; 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1359, at 425 (2d ed. 1990)). Factors to be considered under Rule 19(b) include "1) prejudice to an absent party or others in the lawsuit from a judgment; 2) whether the shaping of relief can lessen prejudice to absent parties; 3) whether adequate relief can be given without participation of the party; and 4) whether the plaintiff has another effective forum if the suit is dismissed." *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 84 (5th Cir. 1997) (citing Fed. R. Civ. P. 19(b)); *see also* 5A Wright & Miller, *Federal Practice & Procedure* § 1359, at 426 ("The burden is on the moving party to show the nature of the unprotected interests of the absent parties."); *Johnston v. Capital Accumulation Plan of Chubb Corp.*, No. 3:98-CV-2296-D, 1998 WL 907002, at *4 (N.D. Tex. Dec. 17, 1998) ("The '[joinder] decision has to be made in terms of the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them.") (alteration in original and citation omitted).

Rule 19 "does not require the joinder of joint tortfeasors." *Nottingham v. Gen. Am. Commc'ns Corp.*, 811 F.2d 873, 880 (5th Cir. 1987) (per curiam) (citations omitted). "Nor does it require joinder of principal and agent." *Id.* (citing *Milligan v. Anderson*, 522 F.2d 1202, 1204-05 (10th Cir. 1975); 7 Wright & Miller, *Federal Practice and Procedure* § 1623). "Finally, Rule 19 does not require joinder of persons against whom [the defendants] have a claim for contribution." *Id.* (citing *Dunlop v. Beloit Coll.*, 411 F. Supp. 398, 403 (W.D. Wis. 1976); 7 Wright & Miller, *Federal Practice and Procedure* § 1623).

"In ruling on a motion to dismiss for failure to join a necessary and indispensable party, a court must accept the complaint allegations as true." *Abbott v. BP Expl. & Prod. Inc.*, 781 F. Supp. 2d 453, 460 (S.D. Tex. 2011) (quoting *United States v. Rutherford Oil Corp.*, No. G-08-0231, 2009 WL 1351794, at *2 (S.D. Tex. May 13, 2009) (citations omitted)). The burden of proof remains on the moving defendant to demonstrate "that an absent party is indispensable and that the action should be dismissed." *SMI-Owen Steel Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 199 F.R.D. 209, 211 (S.D. Tex. 2001) (citing *Nottingham*, 811 F.2d at 880). Nevertheless, "when an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder." *Pulitzer-Polster*, 784 F.2d at 1309 (citing *Boles v. Greeneville Hous. Auth.*, 468 F.2d 476, 478 (6th Cir. 1972)).

Here, Plaintiff has alleged multiple causes of action against multiple defendants, including MIT and Karen. (doc. 1.) The record is devoid of facts or evidence to indicate that complete relief cannot be obtained without King. Although Defendants generally argue that "to the extent that [King] is not a named [d]efendant, he would not be bound by any injunctive relief granted by the Court," and that "it is possible that [the defendants] and [King] could have claims against one

another in light of the circumstances on which Plaintiff's claims are based," (doc. 12 at 16), that does not mean that Plaintiff and the defendants cannot obtain complete relief between themselves. As noted, Rule 19 does not require the joinder of joint tortfeasors or persons against whom the defendants have a claim for contribution. *Nottingham*, 811 F.2d at 880 (citations omitted). In conclusion, King is neither a required nor an indispensable party.[7]

Defendants' motion to dismiss under Rule 12(b)(7) is **DENIED**.

## V. *COLORADO RIVER* DOCTRINE

Defendants also seek abstention from the exercise of jurisdiction and dismissal of the case under the *Colorado River* doctrine. (doc. 12 at 19.)

The *Colorado River* doctrine requires courts to "giv[e] regard to conservation of judicial resources and comprehensive disposition of litigation" by abstaining from a case where "a similar action is pending in state court." *Lemery v. Ford Motor Co.*, 205 F. Supp. 2d 710, 713-15 (S.D. Tex. 2002) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "Courts evaluating a request for *Colorado River* abstention must be satisfied that (1) there is a parallel proceeding pending in state court and (2) 'exceptional circumstances'[8] warrant abstention." *Bates v. Laminack*, 938 F. Supp. 2d 649, 662 (S.D. Tex. 2013) (citations omitted). Parallel proceedings are actions "involving the same parties and the same issues." *RepublicBank Dallas Nat. Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987) (per curiam) (quoting *PPG Indus., Inc. v.*

---

[7] Because King is not a necessary party, it is unnecessary to consider the factors under Rule 19(b).

[8] The Supreme Court has identified six factors to consider in determining whether exceptional circumstances justify *Colorado River* abstention: (1) the assumption by either court of jurisdiction over a *res*, (2) the relative inconvenience of the forums, (3) the avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums, (5) whether and to what extent federal law provides the rules of decision on the merits, and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 285-86 (1995)).

*Cont'l Oil Co.*, 478 F.2d 674, 682 (5th Cir. 1973)). The Fifth Circuit has emphasized that even when there are "truly parallel cases" pending in a state and federal court, "only the clearest of justifications will warrant [abstention]." *Id.* (citing *Colorado River*, 424 U.S. at 819). As the parties seeking a discretionary stay or dismissal, the burden is on Defendants to prove that an adequate justification exists for such action.[9] *See United States v. Armstrong*, 784 F. Supp. 356, 360 (N.D. Tex. 1991) (citations omitted).

Here, King, who is not currently a party to this case, filed a declaratory judgment action against Plaintiff in state court before it filed this lawsuit. (doc. 1 at 3 n.1.) None of the defendants in the federal case are parties to the state case, however. *See King v. TeamLogic, Inc.*, No. DC-16-08626 (44th Dist. Ct., Dallas County). In the absence of the same parties and the same issues, Defendants have failed to show that there are "parallel proceedings," as required by the *Colorado River* doctrine.[10] *See, e.g., Bates*, 938 F. Supp. 2d at 664 (denying a motion to abstain under the *Colorado River* doctrine because there were no pending parallel proceedings). Defendants' motion for abstention is **DENIED**.

## VI. CONCLUSION

Defendants' motions to dismiss under Rules 12(b)(1), (6), and (7), and their motion for abstention and dismissal under the *Colorado River* doctrine are **DENIED**.

---

[9] In their reply, Defendants seemed to argue that this burden was on Plaintiff. (See doc. 31 at 8) (noting that "[Plaintiff] . . . makes absolutely no effort to claim that the State Court Case and the Federal Court Case are anything but parallel in its Response to this Motion").

[10] Because Defendants have not shown that there is a "parallel proceeding," it is unnecessary to consider whether "exceptional circumstances" warrant abstention. *See Bates*, 938 F. Supp. 2d at 662.

**SO ORDERED** this 8th day of May, 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE